**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION; | : | |
| Plaintiff | : | CIVIL ACTION |
| vs. | : | NO. 08-MC-145 |
| SUNOCO, INC. (R&M); | : | |
| Respondent | : | |

**ORDER & MEMORANDUM**

**O R D E R**

**AND NOW**, this 26th day of January, 2009, upon consideration of the Equal Employment Opportunity Commission's Application for an Order to Show Cause Why an Administrative Subpoena Should Not Be Enforced (Document No. 1, filed August 12, 2008); and Sunoco, Inc.'s Memorandum of Law of Respondent Sunoco, Inc. (R&M) in Opposition to Plaintiff's Application for an Order to Show Cause Why an Administrative Subpoena Should Not Be Enforced (Document No. 7, filed September 16, 2008), for the reasons set forth in the attached Memorandum, **IT IS ORDERED** that the Equal Employment Opportunity Commission's Application for an Order to Show Cause Why an Administrative Subpoena Should Not Be Enforced is **GRANTED**.

**M E M O R A N D U M**

**I.     Introduction**

The Equal Employment Opportunity Commission ("EEOC") initiated this action against Sunoco, Inc. (R&M) ("Sunoco") on August 12, 2008. The case arises out of the EEOC's

1

investigation of discriminatory testing practices at five of Sunoco's oil refineries. Sunoco objected to a subpoena issued by the EEOC seeking information as to Sunoco's testing practices at these refineries, prompting the EEOC to commence the instant enforcement action.

Presently before the Court is the EEOC's Application for an Order to Show Cause Why an Administrative Subpoena Should Not Be Enforced ("Application"). For the reasons that follow, the Court grants the EEOC's Application.

## II.  Background

On or about February 5, 2007, Kevin Powell, a Sunoco employee, filed a Charge of Discrimination ("Charge") with the EEOC. (Resp't Mem. Opp. Pl.'s Application Ex. A.) In the Charge, Mr. Powell alleged that Sunoco discriminated against him on the basis of age, race, and color by failing to promote him over younger, less qualified white applicants and retaliated against him after he complained about discriminatory treatment at his refinery. (Id.) In addition, Mr. Powell alleged that Sunoco discriminated against African Americans by administering a test that disparately impacts qualified African American applicants (Id.; Petr's Application 2.)

On April 19, 2007, the EEOC sent Sunoco a First Request for Information, to which Sunoco responded on May 18, 2007, addressing the allegations against it and providing information and documents related to Mr. Powell's claims. (Resp't Mem. Opp. Pl.'s Application 4.) Approximately eleven months later, on April 17, 2008, the EEOC issued to Mr. Powell a limited Notice of Right to Sue as to his individual allegations of discrimination. (Id. at Ex. G.) The limited Notice stated: (1) the EEOC would "terminat[e] its processing of this charge" as to the "Charging Party's individual allegations;" and (2) the EEOC "will continue to process this charge" as to "the issue of testing." (Id.)

On April 17, 2008, William D. Cook, the EEOC's enforcement manager, wrote a letter to Tiana R. Escofil, Sunoco's Labor and EEO Specialist, stating that "the EEOC will discontinue its processing of the Charging Party's allegations of individual harm" while "continu[ing] to process the charge insofar as it relates to tests utilized" at five Sunoco refineries. (Id. at Ex. H.) Brenda Hester, the EEOC's investigator for this case, also wrote a letter to Ms. Escofil, "informing [Sunoco] that the scope of the Commission's investigation is being expanded to include additional facilities and issues regarding [Sunoco's] hiring process." (Id.) Attached to Ms. Hester's letter was a Second Request for Information seeking additional information and records related to this issue of discriminatory testing.[1] (Id.)

On April 24, 2008, before the date the additional information was due, Carol Monaghan, Sunoco's Supervisor of Labor and EEO Investigations, wrote a letter to Ms. Hester requesting that the EEOC provide the charge information it was investigating since it "discontinued the processing" of Mr. Powell's charge and never issued a Commissioner's charge. (Id. at Ex. J.) After a telephone call between Ms. Hester and Ms. Monaghan on April 30, 2008 that did not resolve the issue, Ms. Monaghan wrote Ms. Hester a letter advising that Sunoco "will not provide any information for a charge that has been discontinued and where a 'Right to Sue' has been issued." (Id. at K.)

On June 6, 2008, the EEOC served Sunoco with a subpoena for the requested information (Id. at Ex. L.) On June 18, 2008—the day before the subpoenaed information was due—Brian

---

[1] Specifically, the Second Request for Information sought the following items: copies of tests used during the hiring process; a list of every position at the five facilities in question; an explanation of the grading system used; any evaluation forms used to determine qualifications; the procedures used in administering written, "practical," or manual tests and any variations therefrom; the scoring process for each test; circumstances in which the test would be waived and a list of any individuals for whom it was waived; whether applicants can retake a test and a list of any individuals who did so; and a list of applicants or employees who took the test for any position. (Resp.'s Mem. Opp'n Ex. H.)

Rhodes, a senior attorney at Sunoco, informed Ms. Hester that Sunoco would produce some information by June 26 or 27, 2008. (Pl.'s Application 3.) However, Sunoco argues that "Mr. Rhodes was under the mistaken belief that the EEOC was seeking the information pursuant to a valid open charge" when he spoke with Ms. Hester. (Resp't Mem. Opp. Pl.'s Application 6.) When he realized his mistake, Mr. Rhodes informed Ms. Hester that Sunoco would not be submitting any information and expressed his intent to file a petition to revoke. (Id. at 6–7.) Ms. Hester, however, said it was too late to do so. (Id. at 7.) Nonetheless, by letter of July 1, 2008—25 days after the subpoena was served—Sunoco objected to the subpoena on the grounds that it lacked relevance, was overly broad, unduly burdensome, and did not give fair notice of the existence and nature of any pending charge to which it related. (Id. at Ex. N.)

On July 16, 2008, Mr. Powell filed a lawsuit against Sunoco in the Eastern District of Pennsylvania, alleging race-based discrimination and retaliation under Title VII of the Civil Rights Act of 1964, the Civil War Civil Rights Statute (42 U.S.C. § 1981), and the Pennsylvania Human Relations Act (43 P.S. § 951 et seq). (Id. at Ex. O.) Mr. Powell did not allege discriminatory testing in his lawsuit. (Id.)

**III.   Legal Standard**

The EEOC has the power to issue administrative subpoenas in furtherance of its investigations of alleged discrimination. 42 U.S.C. § 2000e-9; 29 U.S.C. § 161(1); EEOC v. County of Hennepin, 623 F. Supp. 29, 31 (D. Minn. 1985). Federal district courts have jurisdiction to issue orders requiring compliance with subpoenas issued by the EEOC. 42 U.S.C. § 2000e-8; 29 U.S.C. § 161(2); EEOC v. Guess?, Inc., 176 F. Supp. 2d 416, 420 (E.D. Pa. 2001).

"Subpoena enforcement proceedings 'are designed to be summary in nature'" with the

court exercising a "limited" oversight role. EEOC v. United Air Lines, Inc., 287 F.3d 643, 649 (7th Cir. 2002) (quoting EEOC v. Tempel Steel Co., 814 F. 2d 482, 485 (7th Cir. 1987)). A district court reviews administrative subpoenas "to satisfy itself that the charge is valid, that the material requested is relevant to the charge and to assess any contentions by the employer that the demand for information is too indefinite or has been made for an illegitimate purpose." Guess?, 176 F. Supp. 2d at 420 (citing Univ. of Pa. v. EEOC, 493 U.S. 182, 191 (1990); EEOC v. Shell Oil Co., 466 U.S. 54, 72 n.26 (1984)).

## IV.  Discussion

In the instant Application, the EEOC argues that its subpoena should be enforced because: (1) Sunoco waived its objections to enforcement of the subpoena by failing to exhaust its administrative remedies; (2) Sunoco does not have any valid, independent defense for non-compliance with the subpoena because it is valid and within the agency's authority; and (3) compliance with the subpoena will not impose an undue burden on Sunoco. In response, Sunoco asserts that: (1) it has not waived its right to challenge the EEOC's subpoena; (2) the EEOC lacks authority to seek enforcement of the subpoena in this case because there is no valid, open Charge; and (3) even if the subpoena is valid, it should not be enforced because compliance will impose an undue burden on Sunoco.

The Court addresses each of these issues in turn.

### A.  Waiver

The EEOC claims that Sunoco waived its objections to enforcement of the subpoena by failing to exhaust its administrative remedies. Specifically, Sunoco did not comply with 29 C.F.R. § 1601.16(b)(1) (1998), the applicable EEOC regulation that requires entities objecting

to subpoenas to file a petition to revoke or modify the subpoena within five days of service of the subpoena. (Pl.'s Application 4.) Indeed, Sunoco never petitioned the EEOC. (Id.) The EEOC cites to numerous cases holding that when an employer fails to exhaust its administrative remedies, including objecting within the time period designated by the relevant regulation, then its objections are waived. (Pl.'s Application 4.)

In response, Sunoco contends that it did not waive its objections to enforcement of the subpoena. Sunoco bases its argument in principle on EEOC v. Lutheran Social Services, a case in which the D.C. Circuit rejected the same waiver argument the EEOC makes in this case. 186 F.3d 959 (D.C. Cir. 1999). The Lutheran court reached its decision by first identifying a conflict between the mandatory language of the applicable regulation, § 1601.16(b)(1), and the permissive language of the statute, 29 U.S.C. § 161.[2] That is, the regulation, § 1601.16(b)(1) states that "[a]ny person served with a subpoena who intends not to comply *shall* petition the issuing Director . . . to seek its revocation or modification . . . within five days . . . after service of the subpoena." § 1601.16(b)(1) (emphasis added). However, the statute, § 161(1) states that "[w]ithin five days after the service of a subpena [sic] on any person . . . such person *may* petition . . . to revoke . . ."). 29 U.S.C. § 161(1) (emphasis added).

The Lutheran court then underscored that, regardless of the regulatory language, "'exhaustion is a jurisdictional prerequisite . . . [o]nly when Congress states in clear, unequivocal terms that the judiciary is barred from hearing an action until the administrative agency has come to a decision.'" Lutheran, 186 F.3d 959, 962 (quoting I.A.M. Nat'l Pension Fund Benefit Plan C

---

[2] 42 U.S.C. § 2000e-9, the provision of Title VII governing the EEOC's investigatory power, states that the provisions of 29 U.S.C. § 161 shall apply "[f]or the purpose of all hearings and investigations conducted by the Commission or its duly authorized agents or agencies . . . ." 29 U.S.C. § 2000e-9.

v. Stockton Tri Indus., 727 F.2d 1204, 1208 (D.C. Cir. 1984)). In the absence of such explicit language in Title VII, the Lutheran court concluded that the EEOC "has no power to strip federal courts of authority to determine whether the subpoena the agency seeks to enforce is lawful." Id.

Thus, with "no categorical bar" to reviewing the legality of the subpoena, the Lutheran court examined the subpoena in its case and determined that the employer's failure timely to present its objections was excusable. Id. at 964. The court's decision was based on the following: (1) the subpoena neither stated that "a subpoena recipient has five days to object" nor "point[ed] the recipient" to the regulation containing this requirement; and (2) the employer did not raise its objections to the subpoena for the first time in court but had repeatedly objected based on the ground of attorney-client privilege after the EEOC issued its request. Id. at 964–65.

Sunoco argues that Lutheran should control in this case because, as in Lutheran, the subpoena was silent as to the five day period for filing objections and Sunoco raised its objections with the EEOC before an enforcement action was initiated. (Resp't Mem. Opp. Application 10–11.) However, the Court finds the facts underlying the Lutheran case distinguishable from the instant case because of the nature of the employers' objections in each action. In Lutheran, the employer objected to production of a document based on attorney-client privilege grounds. Lutheran, 186 F.3d at 961. The fact that the objection was rooted in the attorney-client privilege played an important role in the Lutheran court's decision to review the subpoena despite the employer's failure to exhaust its administrative remedies. Indeed, the court limited the scope of its holding by emphasizing that its conclusion "would do little if any damage to the integrity of the Commission's [exhaustion] procedures" because "the EEOC has no expertise with respect to the attorney-client and work product privileges." Id. At 965. Rather,

7

"expertise as to those privileges resides in the federal courts," making this case "quite different from the more typical situation where a subpoena recipient's objections rest on relevance or particularity" as to which the EEOC "possesses considerable expertise . . . ." Id.; see also NLRB v. Coughlin, No. 4:04-MC-8, 2005 WL 850964, *3 (S.D. Ill. Mar. 4, 2005) (finding that Lutheran, "which acknowledged that it was limited to the particular circumstances of that case," is not "persuasive to justify not requiring exhaustion of administrative remedies" where a subpoena is contested because it would unduly interfere with ongoing labor negotiations); EEOC v. Guess?, 176 F. Supp. 2d 416 (E.D. Pa. 2001) (following the Lutheran court's holding in a case where objections to the subpoena were based on grounds of attorney-client privilege and the work product doctrine).

In the instant case, Sunoco objects to the subpoena on the ground that "[Sunoco] has not been given fair notice of the existence and nature of any pending charge against it to which the subpoena relates." (Resp't Mem. Opp. Application Ex. N.) The Court finds that this objection, which concerns the validity of the subpoena, implicates "the more typical situation" recognized by the Lutheran court "where a subpoena recipient's objections rest on" matters as to which the "EEOC possesses considerable expertise . . . expertise to which [a court] would comfortably defer." Lutheran, 186 F.3d at 965.

Thus, the Court concludes that Lutheran is not controlling in the instant case. Rather, the Court will follow numerous other courts, which have consistently held that when an employer fails to petition to revoke or modify the subpoena within five days, its objections are waived for failure to exhaust its administrative remedies. See, e.g., EEOC v. Cuzzens of Georgia, 608 F.2d 1062, 1064 (5th Cir. 1979) (holding that an employer "making no effort to exhaust the available

administrative remedies may not thereafter challenge the subsequent judicial enforcement of that subpoena for any reason short of objections based on constitutional grounds"); EEOC v. Roadway Express, Inc., 569 F. Supp. 1526, 1528 (N.D. Ind. 1983) (stating that "a party will normally be denied judicial relief for injury until administrative remedies have been exhausted"); EEOC v. County of Hennepin, 623 F. Supp. 29, 32 (D. Minn. 1985) ("On the basis of failure to exhaust administrative remedies alone, defendant must comply with the subpoena."). Accordingly, the Court rejects Sunoco's argument on this issue and finds that Sunoco waived its objections to enforcement of the subpoena by failing timely to file a petition to revoke or modify with the EEOC.

    **B.**    **Validity of Charge**

The EEOC argues that the subpoena is valid because it is within the EEOC's authority to issue, is not too indefinite, and seeks information relevant to the EEOC's investigation. (Pl.'s Application 5 (citing Univ. of Pa. v. EEOC, 493 U.S. 182, 191 (1990).) The thrust of Sunoco's counter-argument is that the EEOC lacks authority to seek enforcement of the subpoena because the subpoena is not based on a valid, open charge. That is, when the EEOC issued a limited Notice of Right to Sue to Mr. Powell, it dismissed his Charge and with it the EEOC's right to issue and seek enforcement of an investigative subpoena based on that charge. (Resp't Mem. Opp. Pl.'s Application 12.) In support of its position, Sunoco cites to EEOC v. Hearst, where the Fifth Circuit held that "in a case where the charging party has requested and received a right to sue notice and is engaged in a civil action that is based upon the conduct alleged in the charge filed with the EEOC, *that charge* no longer provides a basis for EEOC investigation." 103 F.3d 462, 469–70 (5th Cir. 1997).

In this case, Sunoco is correct that the EEOC issued a limited Notice of Right to Sue, pursuant to which Mr. Powell filed a lawsuit against Sunoco. However, Sunoco neglects a significant aspect of the Notice—that it is hybrid in nature, stating not only that the "EEOC is terminating its processing of this charge *(for Charging Party's individual allegations)*" but also that the "EEOC will continue to process this charge *(for the issue of testing)*." (Resp't Mem. Opp. Pl.'s Application Ex. G (emphasis added).) Only a specific and limited portion of the Charge was terminated while that portion of the Charge referring to the issue of testing was preserved. Thus, the Charge on the issue of testing remains pending, permitting the EEOC to continue its investigation as to the issue of discriminatory testing. On this issue, the Court notes that the lawsuit filed by Mr. Powell in the Eastern District of Pennsylvania is silent on testing, seeking relief only on the grounds of race-based discrimination and retaliation. (Id. at Ex. O.)

Furthermore, given the Court's conclusion that the discriminatory testing Charge is open and pending in this case, its validity is not jeopardized by the Fifth Circuit's decision in Hearst. The Hearst court's ruling was not based on a hybrid charge, which remains open, in part, as is the situation in the instant case. It is also worth noting that the Ninth Circuit recently addressed the issue upon which the Fifth Circuit ruled in Hearst. In EEOC v. Federal Express Corp., the Ninth Circuit squarely rejected the Fifth Circuit's reasoning, holding instead that the "EEOC retains the authority to issue an administrative subpoena against an employer even after the charging party has been issued a right-to-sue notice and instituted a private action based upon that charge." 543 F.3d 531, 544 (9th Cir. 2008). Accordingly, the Court rejects Sunoco's arguments on this ground. In view of this ruling, this Court need not decide whether to follow the Fifth or the Ninth Circuit on this issue.

### C. Undue Burden

Finally, the EEOC argues that compliance with the subpoena will not impose an undue burden on Sunoco. (Pl.'s Application 13.) In support of its position, the EEOC cites cases noting that a subpoena will pose such a burden if "compliance would threaten the normal operation of a respondent's business," EEOC v. Quad/Graphics, Inc., 63 F.3d 642, 645 (7th Cir. 1995) (quoting EEOC v. Bay Shipbuilding Corp., 668 F.2d 304, 313 (7th Cir. 1981)), or "unduly disrupt and seriously hinder normal operations of the business." EEOC v. Citicorp Diners Club, Inc., 985 F.2d 1036, 1040 (10th Cir. 1993). Sunoco counters that, because the subpoena is overly broad in scope, asking for "every test" Sunoco uses in hiring for "all positions" over the course of a four-year period, the subpoena will impose an undue burden. (Resp.'s Mem. Opp'n Order Show Cause 15.) According to Sunoco, compliance with the subpoena will require it to "identify, obtain and synthesize thousands of pages of documents from five different facilities," requiring "an inordinate amount of time and money" and "resulting in a significant drain on Sunoco's resources." (Id.)

In this case, Sunoco does not demonstrate how compliance with the subpoena would pose a burden so great that it would "threaten," "unduly disrupt," or "seriously hinder" its normal business operations. Rather, Sunoco summarily asserts that the documents it would have to collect and produce would be "inordinate[ly]" and "significant[ly]" cost- and time-intensive. Courts have warned against such "[c]onclusory allegations," EEOC v. United Air Lines, Inc., 287 F.3d 643, 653 (7th Cir. 2002), and will not excuse compliance based "simply upon the cry" of undue burden. Citicorp Diners, 985 F.2d at 1040. This Court agrees with those cases and rejects Sunoco's argument on this ground.

## V. Conclusion

For the foregoing reasons, the Court grants the EEOC's Application for an Order to Show Cause Why an Administrative Subpoena Should Not Be Enforced.

**BY THE COURT:**

**/s/ Honorable Jan E. DuBois**
**JAN E. DUBOIS, J.**